UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUNISH KUMAR,<br><br>Petitioner,<br>v.<br><br>RAUL MALDONADO, JR., *in his official capacity as Warden of the Metropolitan Detention Center*; JUDITH ALMODOVAR, *in her official capacity as Field Office Director, New York City Field Office, U.S. Immigration and Customs Enforcement*; DAVID VENTURELLA, *in his official capacity as Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*,<br><br>Respondents. | **TEMPORARY RESTRAINING ORDER**<br>26-CV-5326 (NRM) |

**NINA R. MORRISON**, United States District Judge:

## BACKGROUND

Petitioner Munish Kumar is a 33-year-old Indian citizen who entered the United States on December 24, 2022, and has continually resided in the country since that time. He was arrested on May 13, 2026 by Immigration and Customs Enforcement ("ICE"), and has remained in ICE custody ever since. On August 28, 2026, while detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, Petitioner filed the instant Emergency Petition for Writ of Habeas Corpus (the "Petition"), ECF No. 1, by and through counsel. His Petition alleges that his detention

violates his constitutional and statutory rights and seeks entry of an order directing his immediate release from detention.

As set forth in the Petition, Petitioner entered the country near Lukeville, Arizona in 2022 and was apprehended by the Department of Homeland Security ("DHS"). Pet. ¶ 19. He was released on his own recognizance after expressing his fear of return to India and after he was deemed not to pose a flight risk or danger to the community. *Id.* ¶ 20. He eventually filed an I-589 application for asylum and withholding of removal. *Id.* ¶ 21. Petitioner avers that he has "complied with the conditions of his release," including by "appear[ing] for required immigration appointments." *Id.* ¶ 22. Moreover, "[h]e has no criminal convictions in the United States or elsewhere." *Id.*

Petitioner alleges that he was arrested on May 13, 2026 without "written notice identifying changed circumstances"; "a hearing before a neutral decisionmaker"; government justification regarding the "terminati[on of] the liberty [he] had exercised for more than three years"; or a "Form I-200 warrant . . . issued and served" upon his arrest. *Id.* ¶¶ 23–24. He further alleges that ICE failed to conduct an individualized flight-risk determination at the time of his arrest, and that no removal proceedings were pending against Petitioner at that time. *Id.* ¶¶ 25–26 (citing ECF No. 1-7).

1. *New Jersey Action*

After his arrest, ICE transferred Petitioner to Delaney Hall Detention Facility ("Delaney Hall") in Newark, New Jersey. *Id.* ¶ 27. He filed an emergency petition for writ of habeas corpus on May 15, 2026, in the United States District Court for the

District of New Jersey, challenging his detention on statutory and constitutional grounds. *Id.*; *see Kumar v. Soto*, No. 26-CV-5602 (RK) (D.N.J. May 15, 2026) (the "New Jersey Action"), ECF No. 1. That same day (on May 15, 2026), the court in the New Jersey Action issued an order enjoining the respondents from transferring Petitioner outside the District of New Jersey. *Kumar*, No. 26-CV-5602 (RK) (D.N.J. May 15, 2026), ECF No. 2.

On July 2, 2026, the court in the New Jersey Action ordered the respondents to, within seven days, provide Petitioner "with an individualized bond hearing before an immigration judge who shall assess whether he presents a flight risk or a danger to the community, pursuant to 8 C.F.R. § 236.1(c)(8), (d)(1)." *Kumar*, No. 26-CV-5602 (RK) (D.N.J. July 2, 2026), ECF No. 4. A bond hearing for Petitioner was held on July 9, 2026. ECF No. 1-5 at 1. During it, the IJ placed the burden on Petitioner to show that he was entitled to release on bond. Ultimately, the IJ "[did] not find that [Petitioner] pose[d] a danger," but concluded that Petitioner's tax returns and letter of support were "insufficient for [him] to *meet his burden* that he does not pose a flight risk." *Id.* at 2 (emphasis added). The IJ also found that Petitioner had presented insufficient evidence of a fixed address or community ties and ultimately denied bond for failing to prove that he did not pose a flight risk. *See id.*; ECF No. 1-4 at 1.

The respondents in the New Jersey Action filed a letter on July 9, 2026, stating that Petitioner had been denied bond and requesting that court dismiss the petition, lift the order enjoining them from transferring Petitioner, and close the case. ECF No. 1-6 at 1. On July 13, 2026, the court granted the respondents' request, writing

"So Ordered" on the respondents' letter. *See Kumar*, No. 26-CV-5602 (RK) (D.N.J. July 13, 2026), ECF No. 7 at 2.

*2. The Present Action*

At some unspecified time after the New Jersey Action was terminated, Petitioner was transferred to the MDC, where he remains to this day. *Id.* ¶ 38. He initiated this action on August 28, 2026, and the case was assigned to the undersigned the same day. Also that same day, this Court issued an Order to Show Cause ("OTSC"), ECF No. 4, directing Respondents to file, by 6:00 P.M. on August 31, 2026, a submission (1) providing certain information about Petitioner and his circumstances, (2) indicating the statutory provision under which they assert the authority to detain Petitioner, and (3) addressing whether there is any basis to distinguish the asserted grounds for detention from this Court's decision in *H.A.C.F. v. Francis*, No. 26-CV-00872 (NRM), 2026 WL 482607 (E.D.N.Y. Feb. 20, 2026), *amended on reconsideration in part*, No. 26-CV-00872 (NRM), 2026 WL 861152 (E.D.N.Y. Mar. 30, 2026). The Court further directed that, if Respondents asserted no basis to distinguish this Petition from *H.A.C.F.*, the submission could take the form of a letter so stating, and indicating whether Respondents continue to oppose issuance of the writ, subject to preservation of Respondents' arguments for appeal. *Id.* at 3–4.

Respondents timely filed a two-page letter response[1] on August 31, 2026. In

[1] Notably, the government's response failed to provide basic information required by the Court's OTSC, including "Petitioner's A-number, current place of detention, and a contact person who can facilitate counsel's access to Petitioner,"

the response, they appear to claim that Petitioner has not established that his bond hearing (and, by implication, his present detention) was constitutionally inadequate. ECF No. 6 ("Resp'ts' OTSC Resp.") at 1. They contend that Petitioner has not demonstrated that "he is entitled to a burden shifted bond hearing" — that is, one in which the government bears the burden of justifying his continued detention by clear and convincing evidence — "[since] he has been detained only for just over three months." *Id. at* 1. In a footnote, Respondents also invoke the "abuse-of-the-writ" doctrine, contending that the New Jersey Action and the bond hearing that resulted from those proceedings may bar this Court from considering the merits of his current Petition. Resp'ts' OTSC Resp. at 1 n.1.

Despite this, Respondents nevertheless concede that "they cannot show that an individualized custody determination was conducted for Petitioner prior to his detention," and that they are unable to distinguish the present case from this Court's analysis in *H.A.C.F.* *Id.* at 2.

## DISCUSSION

Upon review of the Petition, as well as Respondents' submission conceding that Petitioner did not receive an individualized bond hearing before detention, the Court finds that Petitioner has sufficiently demonstrated that he is likely to succeed on the merits of his claim that his detention was unlawful, and that he would suffer irreparable harm if temporary relief was not granted. For those reasons and the

---

and "the statutory provision(s) under which Respondents assert the authority to detain Petitioner." OTSC at 2. In light of Respondents' analysis in their response, the Court presumes that Petitioner is detained under 8 U.S.C. § 1226(a).

reasons that follow, the Court hereby issues a **TEMPORARY RESTRAINING ORDER** directing Respondents to release Petitioner from custody and enjoining Respondents from re-detaining Petitioner while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

Under Second Circuit law, a temporary restraining order is appropriate when a party can demonstrate: "(1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest." *Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *3 (E.D.N.Y. Dec. 22, 2025) (citing *Nat'l Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018)). "The movant must also show that the balance of equities supports the issuance of an injunction [or temporary restraining order]." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019) ("The standards for a preliminary injunction and temporary restraining order are identical."). "When the government is a party to the suit, [a court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA*, 17 F.4th at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

The Court here finds that Petitioner is likely to succeed on the merits of his claim that his detention violated his constitutional and statutory rights. As this

Court and many others have held, § 1226(a)'s implementing regulations require "an individualized determination as to whether the detention of a noncitizen is appropriate" *prior* to detention. *H.A.C.F.*, 2026 WL 861152, at *2 (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025)); *see, e.g.*, *Grance v. Maldonado*, No. 26-CV-3346 (AMD), 2026 WL 1815931, at *4 (E.D.N.Y. June 24, 2026); *E.A.C.F. v. Areta*, No. 26-CV-03047 (MMG), 2026 WL 1213414, at *3 (S.D.N.Y. May 4, 2026); *Goorakanis v. Lyons*, No. 29-CV-9456 (DEH), 2025 WL 362896, at *11 (S.D.N.Y. Dec. 15, 2025); *Gopie v. Lyons*, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025). Respondents concede that no individualized custody determination was conducted for Petitioner prior to his detention. *See* Resp'ts' OTSC Resp. at 2.

Respondents implicitly argue that detention here is lawful under § 1226(a) because Petitioner was provided with a *post*-deprivation custody bond hearing in the New Jersey Action. *See* Resp'ts' OTSC Resp. at 1. However, this Court in *H.A.C.F.* and *Hyppolite* made clear that § 1226(a) and the Due Process Clause requires that noncitizens be given notice and a bond hearing *prior* to detention. *See H.A.C.F.*, 2026 WL 861152, at *2; *Hyppolite*, 808 F. Supp. 3d at 491–95. Given that neither the Second Circuit nor the United States Supreme Court has yet to address this precise question, the Court adheres to the reasoning of its earlier decisions and the conclusion reached by many other courts in this circuit. *See, e.g.*, *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (holding that a "custody redetermination hearing" is "no substitute for the

requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause" (internal quotation omitted)); *Tumba v. Francis*, 813 F. Supp. 3d 394, 406 (S.D.N.Y. 2025) (noting that "the Government's violation of Petitioner's constitutional rights originated with her detention in the first instance," and that "a [post-deprivation] bond hearing could not cure that constitutional violation"); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 318 (E.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494–95 (S.D.N.Y. 2025); *Singh v. Maldonado*, No. 26-CV-00019 (OEM), 2026 WL 233216, at *8–10 (E.D.N.Y. Jan. 29, 2026); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 405 (E.D.N.Y. 2025); *Sidqui v. Almodovar*, No. 25-CV-9349 (VSB), 2026 WL 251929, at *17 (S.D.N.Y. Jan. 30, 2026).

The Court hereby incorporates by reference its earlier analysis of these issues in *H.A.C.F.* and *Hyppolite*. And on this ground alone, the Court finds that Petitioner is likely to succeed on the merits of his claim that Respondents violated his constitutional and statutory rights, and that his detention is therefore unlawful.

While not necessary to the temporary injunctive relief granted here, two other points raised by Respondents bear mentioning (particularly since the parties may wish to brief these issues further as the Court continues to review the merits of the Petition). While Respondents have conceded that this Court's analysis in *H.A.C.F.* would likely control the outcome here, they also appear to argue that the fact that Petitioner appeared before an IJ in New Jersey and was denied bond several weeks after his arrest may provide alternate grounds to deny the writ. *See* ECF No. 6 at 1.

On the present record, the Court disagrees. In *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Court found that the petitioner in that case, who (like Petitioner here) was detained under § 1226(a), was entitled to an additional, burden-shifted bond hearing at which government would be required to prove by clear and convincing evidence that the petitioner was a danger to the community or a flight risk. And there is no dispute that here, after the court in the New Jersey Action directed Respondents to provide Petitioner with a post-detention bond hearing, the IJ denied bond only after applying a different standard — placing the burden on Petitioner to prove that he did not pose a danger nor a flight risk and was entitled to bond. Yet Respondents urge the Court to find that Petitioner's earlier bond hearing provided him with all the process he was due — relying heavily on a footnote in *Velasco Lopez* in which the Second Circuit noted that its decision did not "establish a bright-line rule" dictating when due process requires that persons detained under § 1226(a) must be given a bond hearing at which the government bears the burden of proof by clear and convincing evidence. *See* ECF No. 6 at 1 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.13 (2d Cir. 2020) and *Romero-Arriaza v. Maldonado*, No. 26-CV-03488, 2026 WL 2332831, at *3 (E.D.N.Y. Aug. 5, 2026)).

On the present record, it appears that Respondents' reading of *Velasco Lopez* sweeps both too broadly (in their heavy reliance on a single footnote from that opinion) and too narrowly (in their attempts to argue that Petitioner here has received due process, notwithstanding the Second Circuit's lengthy articulation of the reasons why Velasco Lopez did not). On the latter point, the *Velasco Lopez* opinion

made clear that due process required that the government be held to a far more demanding burden of proof than respondents in that case had provided, where the liberty interests of a § 1226(a) detainee were at stake. In so holding, the Court underscored that "there [is] a considerable risk of error" in a bond hearing that places the burden on a petitioner to justify his release. 978 F.3d at 851. It emphasized that "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* It recognized that a burden-shifted bond hearing can "mitigate[] the risk of error" where a petitioner is "neither a flight risk nor a danger to the community but [is] unable to prove that [is] the case" — specifically because the government has "substantial resources" it is able to deploy to aid a bond determination. *See id.* at 853–54. And it highlighted how "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* at 854.

It is true that the *Velasco Lopez* Court observed that the case before it did not "require" it "to establish a bright line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden" — because the Court had no difficulty finding that "[o]n any calculus, Velasco Lopez's fifteen month incarceration [without such a hearing] . . . violated due process." *Id.* at 855 n.13. But nothing in that footnote, nor in the Court's broader analysis of the relevant constitutional and statutory principles as applied to § 1226(a) detainees specifically, indicated that the *Velasco Lopez* Court would be inclined to find that a person

similarly situated to Petitioner here — *i.e.,* a non-citizen who has no criminal history, who was not in removal proceedings at the time of his arrest, who received neither notice nor an opportunity to be heard before a neutral magistrate prior to being detained, and has now been in custody for nearly four months — is not entitled to similar procedural safeguards. Thus, to the extent Respondents' letter may be read to argue that the bond hearing Petitioner received before the IJ in the New Jersey Action comports with the Court's analysis in *Velasco-Lopez* and renders his present detention lawful, they are unlikely to succeed on that claim.[2]

Finally, a word on the abuse-of-the-writ doctrine, which Respondents (in a brief footnote) invoke to suggest that the instant Petition may be procedurally barred. Resp'ts' OTSC Resp. at 1 n.1. This doctrine serves as a form of *res judicata* in the habeas context, granting courts discretion to deny a subsequent habeas petition when the "petition [] abuses the habeas process," including where it repeats claims raised in an earlier petition. *See Dov v. Warden*, No. 21-CV-8570 (SLC),

[2] Respondents cite, as persuasive authority, a decision by another court in this District declining to order that the petitioner be provided a burden-shifted bond hearing, where the petitioner had been detained for approximately three months. *See Romero-Arriaza v. Maldonado*, No. 26-CV-03488 (EK), 2026 WL 2332831, at *3 (E.D.N.Y. Aug. 5, 2026) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.13 (2d Cir. 2020)). The Court need not, for present purposes, address the *Romero-Arriaza* court's analysis in detail and the extent to which the facts of that case may be distinguishable from this one. But the Court does note that its own preliminary analysis of the precedents relied on by the *Romero-Arriaza* court (including, but not limited to, *Velasco-Lopez* and *Zadvydas v. Davis*, 533 U.S. 678 (2001)) do not appear to support the conclusion that, as long as a petitioner detained under § 1226(a) has been in custody for less than six months, it is presumptively reasonable to continue his detention without requiring the government to prove that it is justified by clear and convincing evidence.

2022 WL 17730112, at *5 (S.D.N.Y. Dec. 16, 2022) (quoting *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004)). It is not clear that the doctrine applies here, because the court in the New Jersey Action did not adjudicate the merits of the constitutional claims brought in the original petition. *See McCleskey v. Zant*, 499 U.S. 467, 487 (1991) (noting that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits"), *superseded by statute in part*, Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220–21, *as recognized in Banister v. Davis*, 590 U.S. 504, 514 (2020). Regardless, the doctrine is an equitable one, and this Court has the discretion to review successive petitions under 28 U.S.C. § 2241. *See id.* at 493. Indeed, in the immigration habeas context, even after AEDPA, federal courts are specifically empowered to do so where "the ends of justice demand" that the petition be heard. *See Lewis v. McElroy*, 294 F. App'x 637, 640 (2d Cir. 2008) (quoting *McCleskey*, 499 U.S. at 485, 495).

In this case, Petitioner is likely to succeed in establishing that his petition is not barred by the abuse of the writ doctrine. There is at least a "colorable showing" that Petitioner would not be deemed a flight risk and would be granted bond if the burden were placed on the government to prove such. *See id.* In addition, Petitioner was originally detained under § 1225 and was not granted access to a bond hearing until the New Jersey court determined that he was similarly situated to non-citizens it had previously held were entitled to such under § 1226(a). *See*

*Kumar*, No. 26-CV-5602 (RK) (D.N.J. July 2, 2026), ECF No. 4. Had Petitioner's claims been heard for the first time today (or even when originally filed) within this Court, Respondents' actions would likely have been unconstitutional under *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), and Petitioner would have been entitled to immediate release. *See H.A.C.F.*, 2026 WL 482607, at *3; *see also Lewis*, 294 F. App'x at 640.

Accordingly, the Court finds that Petitioner has sufficiently shown a likelihood of success in establishing that his detention violates his constitutional and statutory rights, because Petitioner has resided in the United States for almost four years and was entitled to an individualized, pre-detention bond determination under the Immigration and Nationality Act, 8 U.S.C. § 1226(a), which he did not receive.

The Court further finds a strong likelihood of irreparable harm if Petitioner is not released from his current detention. "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza*, 2025 WL 3712274, at *8 (quoting *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)). Additionally, Petitioner asserts that his detention violates his constitutional rights. Pet. ¶¶ 59–67. The constitutional aspect of his claims increases the likelihood that he faces irreparable harm if not released from his current detention. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for the [] conclusion that the plaintiff would suffer

irreparable harm in the absence of preliminary injunctive relief").

Finally, the Court has weighed the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which sets forth the test that courts in the Second Circuit will apply when determining "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25 CV 6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sep. 12, 2025). Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in favor of Petitioner's immediate release from detention. The Court likewise finds that the public interest weighs in favor of this Temporary Restraining Order. *See We The Patriots*, 17 F.4th at 295; *Iza*, 2025 WL 3712274, at *8 ("Freedom from unlawful detention is undoubtedly within the public's interest.").

It is hereby:

**ORDERED**, that Respondents must release Petitioner from custody no later than **3:00 P.M. on September 3, 2026**. Respondents, through counsel, shall file a letter on the docket no later than **5:00 P.M. on September 3, 2026**, confirming that Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Respondents are **ENJOINED** from re-detaining Petitioner, absent prior

authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

In light of this Temporary Restraining Order, the parties shall make submissions in accordance with the following: Respondents shall show cause in writing no later than **5:00PM on September 8, 2026**, as to (1) why the Court should not issue a preliminary injunction enjoining Respondents from re-detaining Petitioner during the pendency of this Court's consideration of the Petition and (2) why the Petition for a writ of habeas corpus should not be granted.

Specifically, in their response to the Petition, Respondents shall: (1) include all omitted information and documentation that they were previously directed to provide in the Court's OTSC, particularly as detailed in sub-paragraphs 1, 2, and 8, *see* OTSC at 2, 5; (2) address why Petitioner is not entitled to habeas relief, in light of *Velasco Lopez*, *Zadvydas*, and the particular factual circumstances and procedural history in this case; and (3) if they choose to invoke the abuse-of-the-writ doctrine, address why that doctrine should apply where Petitioner's previous petition was dismissed without the court in the New Jersey Action reaching the merits of his claims.

Petitioner may file a reply on or before **5:00PM on September 11, 2026**.

The parties are also free to confer and propose an alternative briefing schedule that affords them further time to prepare and file their respective submissions on the merits, provided that the parties jointly consent to an extension of the temporary relief granted in this Order pending further proceedings, with whatever conditions they agree may be reasonable and necessary to ensure Petitioner's return to court.

As an alternative to the above, Respondents may instead file a letter on the docket on or before **September 8, 2026**, indicating that they no longer seek to contest the relief sought in the writ and agree not to re-detain Petitioner absent compliance with § 1226(a), unless they obtain prior leave of this Court to do so, while still preserving their right to appeal or to seek a modification of this order in the event there is an intervening change in law or a material change in factual circumstances.

The foregoing **Temporary Restraining Order** shall expire on **September 17, 2026 at 8:00 A.M.** unless it is extended by further Order of this Court for good cause shown or otherwise. *See* Fed. R. Civ. P. 65(b)(2).

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 3, 2026 at 10:00 A.M.
Brooklyn, New York